Steven W. Block
LANE POWELL PC
1420 Fifth Avenue, Suite 4200
P.O. Box 91302
Seattle, WA 98111
Telephone: 206-223-7000
*Attorney for Defendant Expeditors International Ocean*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| CHUBB EUROPEAN GROUP SE a/s/o BURBERRY GROUP PLC,<br><br>             Plaintiff,<br><br>v.<br><br>EXPEDITORS INTERNATIONAL OCEAN,<br><br>             Defendant. | No. 1:22-cv-03765-JPO<br><br>**MEMORANDUM IN SUPPORT OF DEFENDANT'S FRCP 12(b)(3) MOTION TO TRANSFER VENUE** |

## I.        INTRODUCTION AND RELIEF REQUESTED

Defendant Expeditors International of Washington, Inc. d/b/a Expeditors International Ocean ("Expeditors") moves, pursuant to 28 U.S.C. §1404(a) and FRCP 12(b)(3), for an order transferring this action to the U.S. District Court for the Western District of Washington on the ground that all claims against Expeditors asserted herein are subject to a contractual forum selection clause mandating that litigation take place in Washington.

## II.        FACTUAL BACKGROUND

### 1) *Parties*

Plaintiff is "a corporation with a place of business located at 100 Leadenhall Street, London EC3A 3BP, England, and is the subrogated underwriter of the consignment of Women's Jackets which is the subject matter of this litigation ..."  Complaint at para. 2.  It seeks relief as the insurer of Burberry Group, PLC ("Burberry").  *Id.* at paras. 3, 9, 10, 15, 16 and 17.

Expeditors is a Washington corporation that operates, *inter alia*, as a non-vessel operating common carrier ("NVOCC") as defined by 46 CFR §515.2(k) as is more fully demonstrated below. As an NVOCC, Expeditors does not actually operate ocean vessels; rather, it facilitates transportation as a documented carrier of record.

### 2) Allegations of Operative Fact

Plaintiff alleges the following:

> On or about April 25, 2021, a consignment consisting of 12 packages Women's Jackets, laden in container TCLU 9646068, then being in good order and condition, and sealed with seal's numbered 9476731 and 5477225, was delivered to Expeditors and/or its agents in Genoa, Italy by the cargo shipper. The cargo was booked for transit on board the M/V CSCL SYDNEY in Genoa, Italy destined for the port of New York, New York, all in consideration of an agreed upon freight, and pursuant to Expeditors bill of lading 6400187188 dated April 25, 2021 [sic].

*Id.* at para. 6. Plaintiff further alleges that:

> When the container was opened it was discovered that 3 packages were missing and the remaining 9 packages were empty, resulting in a total loss of the entire consignment. It was then noted that the seals present with this container were different than the seals referenced on the Expeditors' bill of lading as having been placed on the container by the shipper at origin.

*Id.* at para. 11. As damages, plaintiff asserts it sustained damages in the amount of "$225,631.71" through its payment to Burberry under a policy of insurance. *Id.* at paras. 14-19.

### 3) Shipment Documentation

Attached as Exhibit 1 to the Declaration of Colleen Gillespie ("Gillespie Declaration") is a copy of Expeditors' Sea Waybill No. 6400187188 which plaintiff alleges Expeditors issued for the subject shipment. Expeditors issued the Sea Waybill electronically. Gillespie Declaration. It states "ELECTRONIC IMAGE SUBJECT TO TERMS AND CONDITIONS," and further provides as follows:

> A hardcopy of this image can always be generated upon request, which sets forth terms and conditions of service on the reverse side of this page. These terms and conditions are also available at www.expeditors.com. All services provided are subject to these terms and conditions.

2

Attached as Exhibit 2 to the Gillespie Declaration is a hard copy of the terms and conditions incorporated by that reference ("the T&Cs").  Confirming Expeditors' role as an NVOCC is paragraph 5(a)(ii) of the T&Cs, which provide as follows:

> (ii) Merchant acknowledges and agrees that the Carrier is a non-vessel owning common carrier, that it does not own, lease, charter, or operate Vessels or other modes of transportation, or engage in cargo handling or storage, as a result of which Carrier will be required to (and may, in its sole discretion) subcontract with Persons (at any tier), to transport, handle or store cargo to accomplish all or part of the Carriage.

Regarding forum selection, the T&Cs provide as follows at paragraph 27:

> 27. LAW; DISPUTES; VENUE; SEVERABILITY; ETC. (a) This Bill of Lading shall be governed by and construed in accordance with the internal Laws of the State of Washington (excluding its Laws relating to conflicts of law), except as the same may be governed by the federal Law of the United States. MERCHANT IRREVOCABLY CONSENTS TO NON-EXCLUSIVE JURISDICTION AND VENUE FOR LEGAL PROCEEDINGS RELATED TO ALL CLAIMS AND DISPUTES ARISING FROM OR IN CONNECTION WITH THIS BILL OF LADING OR THE GOODS, WHETHER UNDER FEDERAL, STATE, LOCAL, OR FOREIGN STATUTES, REGULATIONS, OR COMMON LAW, IN THE UNITED STATES DISTRICT COURT FOR THE WESTERN DISTRICT OF WASHINGTON OR THE SUPERIOR COURT OF THE STATE OF WASHINGTON SITTING IN KING COUNTY. MERCHANT AND CARRIER HEREBY CONSENT TO THE COMMENCEMENT AND TRANSFER OF ALL SUCH LEGAL PROCEEDINGS TO SUCH COURTS. ***Merchant irrevocably consents to the commencement and to the transfer of venue in any or all such actions to any other venue in which Carrier is party to a legal action brought by itself or a third party that arises from or is connected with the Goods, their carriage, loading, unloading, handling, or storage, or loss, damage, or delay related to any of the Goods. The Merchant waives all defenses based on inconvenience of forum in all actions commenced in the venues agreed to under this Bill of Lading*** … [emphasis added].

Plaintiff has offered Expeditors no explanation as to why it disregarded this forum selection clause or why it believes the clause is inapplicable.

3

116719.0031/9007876.1

### III.  LEGAL ARGUMENT

*1) 28 U.S.C. §1404*

Generally, under 28 U.S.C. §1404, entitled **Change of venue**, the Court is empowered to transfer venue under the circumstances presented herein:

> (a) For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought or to any district or division to which all parties have consented.
>
> (b) Upon motion, consent or stipulation of all parties, any action, suit or proceeding of a civil nature or any motion or hearing thereof, may be transferred, in the discretion of the court, from the division in which pending to any other division in the same district. …

*2) Federal law governs interpretation of Expeditors' Sea Waybill*

Section 27(a) of the T&Cs, entitled "LAW; DISPUTES; VENUE; SEVERABILITY; ETC," provides that federal and/or Washington law governs the Sea Waybill: "This Bill of Lading shall be governed by and construed in accordance with the internal Laws of the State of Washington (excluding its Laws relating to conflicts of law), except as the same may be governed by the federal Law of the United States." As the Ninth Circuit has held, "a bill of lading [is] a traditional maritime contract." *Mediterranean Shipping Co., S.A. v. Ningpo Toptrade Imp. Exp. Co.*, 328 F. App'x 363, 364 (9th Cir. 2009) citing *Norfolk S. Ry. Co. v. Kirby,* 543 U.S. 14, 24–25, 125 S.Ct. 385, 160 L.Ed.2d 283 (2004).  The Ninth Circuit has further ruled:

> The courts interpret and resolve disputes concerning maritime contracts such as the CTBL according to federal law. … "Since the bill of lading is a contract of carriage between shipper and carrier, familiar principles of contract interpretation govern its construction." "Contract terms are to be given their ordinary meaning," and "[w]henever possible, the plain language of the contract should be considered first." "A basic principle of contract interpretation in admiralty law is to interpret, to the extent possible, all the terms in a contract without rendering any of them meaningless or superfluous."

*Starrag v. Maersk, Inc.*, 486 F.3d 607, 616 (9th Cir. 2007)(internal citations omitted]), citing *Yang Ming Marine Transport Corp. v. Okamoto Freighters, Ltd.,* 259 F.3d 1086, 1092 (9th Cir.2001); *Henley Drilling Co. v. McGee,* 36 F.3d 143, 148 n. 11 (1st Cir.1994)); *Klamath Water Users Protective Ass'n v. Patterson,* 204 F.3d 1206, 1210 (9th Cir.1999); and *Chembulk Trading LLC v. Chemex Ltd.,* 393 F.3d 550, 555 (5th Cir.2004). "Maritime contracts are governed by general federal maritime law, not state law, unless they demonstrate some overriding local interest that maritime law cannot accommodate." *Mitsui Marine & Fire Ins. Co. v. Hanjin Shipping Co.*, 279 Ga. App. 689, 692, 632 S.E.2d 467, 469–70 (2006), citing *Norfolk S. Ry. Co. v. Kirby*, 543 U.S. 14, 125 S. Ct. 385, 160 L. Ed. 2d 283 (2004). Thus, federal maritime law governs construction of the Sea Waybill and its incorporated T&Cs.

**3) *Sea Waybill's incorporation of T&Cs***

Generally, "[a] bill of lading "is the basic transportation contract between the shipper-consignor and the carrier; its terms and conditions bind the shipper and all connecting carriers." *Kawasaki Kisen Kaisha, Ltd. v. Plano Molding Co.*, No. 07 C 5675, 2011 WL 3163578, at *3 (N.D. Ill. July 27, 2011), *aff'd in part, rev'd in part,* 696 F.3d 647 (7th Cir. 2012), citing *S. Pac. Transp. Co. v. Commercial Metals Co.,* 456 U.S. 336, 342–43, 102 S.Ct. 1815, 72 L.Ed.2d 114 (1982).

Courts routinely enforce terms and conditions incorporated by reference into ocean bills of lading, frequently stated as a "short form" bill of lading incorporating a long form's terms and conditions. For example, "[c]arriers customarily utilize short form bills of lading as convenient working documents, while reserving for the more cumbersome long forms most of the substantial terms of the agreement. *Cincinnati Milacron, Ltd. v. M/V Am. Legend*, 784 F.2d 1161, 1166 (4th Cir.), *on reh'g*, 804 F.2d 837 (4th Cir. 1986), *citing Commonwealth Petrochemicals, Inc. v. S/S PUERTO RICO,* 607 F.2d 322, 327 (4th Cir. 1979). "Where a contract expressly refers to and incorporates another instrument in specific terms which show a

5

clear intent to incorporate that instrument into the contract, both instruments are to be construed together." *Cargill, Inc. v. Kopalnia Rydultowy Motor Vessel*, 304 F. App'x 278, 282 (5th Cir. 2008). See also *One Beacon Ins. Co. v. Crowley Marine Servs., Inc.*, 648 F.3d 258, 267 (5th Cir. 2011)("The incorporation by reference doctrine applies to maritime contracts as well."); and *Bordelon Marine, L.L.C. v. Bibby Subsea ROV, LLC*, No. CV 16-1106, 2016 WL 3655997, at *6 (E.D. La. July 7, 2016).

It is particularly relevant in the matter at bar that plaintiff itself cites to and sues under Expeditors' sea waybill. As this Court has explained in similar circumstances:

> However, courts in this and other Circuits generally hold that a party suing on a bill of lading has consented to the terms of that bill of lading, ***including its forum selection clause***. *Kukje Hwajae Ins. Co. Ltd. v. M/V HYUNDAI LIBERTY,* 408 F.3d 1250, 1254 (9th Cir.2005) ("We have held that a cargo owner 'accepts' a bill of lading to which it is not a signatory by bringing suit on it."); *Mitsui & Co. (USA) Inc., v. MIRA M/V,* 111 F.3d 33, 36 (5th Cir.1997) ("the district court did not err in determining that, by filing a lawsuit for damages under the bill of lading, [the shipper] has accepted the terms of the bill of lading, ***including the unnegotiated forum selection clause***"); *Farrell Lines Inc. v. Columbus Cello–Poly Corp.,* 32 F.Supp.2d 118, 125 (S.D.N.Y.1997) ( "defendants have filed suit on the Bill of Lading, and thereby accepted its terms") *aff'd sub nom Farrell Lines Inc. v. Ceres Terminals Inc.,* 161 F.3d 115 (2d Cir.1998); *A.P. Moller–Maersk A/S v. Ocean Express Miami,* 550 F.Supp.2d 454, 464 (S.D.N.Y.2008) (collecting these and other cases)[emphasis added].

*Fed. Ins. Co. v. M/V VILLE D'AQUARIUS*, No. 08 CIV. 8997 (PKC), 2009 WL 3398266, at *4 (S.D.N.Y. Oct. 20, 2009).

Other examples of courts enforcing terms and conditions incorporated by reference into bills of lading include *Trans World Tanning Co. v. United States Lines (S.A.), Inc.,* No. CIV.A. 85-3206, 1986 WL 3756, at *1 (E.D. Pa. Mar. 26, 1986); *Ins. Co. of N. Am. v. Puerto Rico Marine Mgmt., Inc.*, 768 F.2d 470, 474 (1st Cir. 1985); *La Interamericana, S.A. v. Delta S.S. Lines, Inc.*, No. CIV. A. 82-3148, 1983 WL 700, at *5 (E.D. La. Dec. 7, 1983); *Pearson v. Black King Shipping Co.*, 769 F. Supp. 940, 945 (E.D. Va. 1991), *aff'd sub nom. Pearson v. Leif Hoegh & Co.,* 953 F.2d 638 (4th Cir. 1992); *Am. Intern Ins. Co. v. Vessel SS Fortaleza*, 446 F. Supp.

221, 224 (D.P.R.), *aff'd sub nom. Am. Int'l Ins. Co. v. Vessel SS Fortaleza,* 585 F.2d 22 (1st Cir. 1978); and *Elgie & Co. v. S.S. S.A. NEDERBURG*, 1976 WL 6455359, at *1 (S.D.N.Y. Sept. 9, 1976); and *Allianz Glob. Corp. & Specialty v. Chiswick Bridge*, No. 13-CV-7559-RA, 2014 WL 6469027, at *2 (S.D.N.Y. Nov. 17, 2014).

Parties are permitted to adopt forum selection clauses in their contracts. *Carnival Cruise Lines v. Shute*, 499 U.S. 585, 596, 111 S. Ct. 1522, 1529 (1991) (forum selection clauses are "prima facie valid"); *see also Strategic Mktg. & Communs. v. Kmart Corp.*, 41 F. Supp. 2d 268, 270 (S.D.N.Y. 1998) (noting that the Second Circuit "has developed a strong policy of honoring forum selection clauses). "Underlying this policy is an understanding that forum selection clauses carry an economic benefit to at least one of the parties that is typically reflected in the overall economics of the contract. As such, these clauses are bargained for terms of the contract that deserve to be honored by courts." *Mercury W. A.G., Inc. v. R.J. Reynolds Tobacco Co.*, 2004 U.S. Dist. LEXIS 3508, at *8 (S.D.N.Y. Mar. 5, 2004).

Due to the strong presumption of validity accorded to these clauses, a party seeking to avoid enforcement of a forum selection clause must make a "strong showing" that enforcement would be unreasonable or unjust, or that the clause is the result of fraud. *New Moon Shipping Co. v. MAN B&W Diesel AG*, 121 F.3d 24, 29 (2d Cir. 1997). Plaintiff can make no such showing here.

**4)  Forum Selection Clause is Enforceable**

Again, the T&Cs incorporated into Expeditors' sea waybill, which governs its relationship with provides as follows at paragraph 27(a): "MERCHANT AND CARRIER HEREBY CONSENT TO THE COMMENCEMENT AND TRANSFER OF ALL SUCH LEGAL PROCEEDINGS TO SUCH COURTS." Plaintiff, as Burberry's subrogee, "stands in the shoes" of Burberry and succeeds to Burberry's contractual rights, including with respect to the forum selection clause. *Albany Ins. Co. v. Banco Mexicano, S.A.*, 96 Civ. 9473 (DAB), 1998

7

U.S. Dist. LEXIS 16292, at *7 (S.D.N.Y. Oct. 14, 1998); *see also Farrell Lines v. Columbus Cello-Poly Corp.*, 32 F. Supp.2d 118, 126 (S.D.N.Y. Sep. 12, 1997) (forum selection clauses are enforced against the insurer of cargo even though that party did not sign or negotiate the bills of lading).  Because Burberry consented to transfer of proceedings to the courts specified in the forum selection clause, plaintiff is bound by that consent. *See id.* ("if . . . a party could escape the effect of a forum selection clause by assigning or subrogating its rights, such a clause would serve little purpose, which certainly is not in line with the Supreme Court's view of the importance of such clause").

Expeditors moves to transfer this action to the Western District of Washington on the ground Expeditors and Burberry both consented "to the commencement and transfer of all such legal proceedings to" the federal district court located in the Western District of Washington or to the Washington superior court located in King County.  Transfer of venue to the Western District of Washington would properly effect the parties' express agreement.

Plaintiff may argue that the forum selection clause contains permissive forum selection language, insofar as it provides that "MERCHANT IRREVOCABLY CONSENTS TO *NON-EXCLUSIVE* JURISDICTION AND VENUE FOR LEGAL PROCEEDINGS RELATED TO ALL CLAIMS AND DISPUTES ARISING FROM OR IN CONNECTION WITH THIS BILL OF LADING . . . ." House Bill § 27(a) (emphasis added). See *Del. Tr. Co. v. Wilmington Tr., N.A.*, 534 B.R. 500, 506 (S.D.N.Y. 2015) (describing a "non-exclusive" forum selection clause as "permissive"). But when assessing whether a forum selection clause is mandatory or permissive, courts must look to the wording of agreement as a whole and apply ordinary principles of contract interpretation. *Bison Pulp & Paper Ltd. v. M/V Pergamos*, 89 Civ. 1392 (MJL), 1995 U.S. Dist. LEXIS 22057, at *30 (S.D.N.Y. Nov. 29, 1995).  When permissive language is paired with language that constitutes a waiver of objections to a designated venue,

the forum selection clause is enforced as mandatory. *S & L Birchwood, LLC v. LFC Capital, Inc.*, 752 F. Supp. 2d 280, 283 (E.D.N.Y. 2010).

Here, the language of the clause, read as a whole, results in a mandatory forum unless both parties consent to venue elsewhere. Burberry consented to non-exclusive jurisdiction and venue in certain Washington courts, but also consented to the commencement or transfer of proceedings to those designated Washington courts. In other words, the forum selection clause foresees three possible scenarios:[1] (1) if a plaintiff commenced a suit under the sea waybill in one of the designated courts, the defendant could not transfer the case to a different venue because the defendant consented to the commencement of the suit in the designated courts; (2) if a plaintiff commenced a suit under the sea waybill in a non-designated venue, the defendant could permissibly consent to venue in the non-designated venue; and (3) if a plaintiff commenced a suit under the sea waybill in a non-designated venue but the defendant wished to transfer the case to a designated venue, the case must be transferred because the plaintiff consented to transfer of the case to a designated venue.

This case arises as the third scenario. Plaintiff initiated this suit in a non-designated forum, the Southern District of New York, but Expeditors seeks transfer to a designated forum, the Western District of Washington. Under the terms of the contract, enforcement of the forum selection clause in this situation is mandatory.

## IV. CONCLUSION

For the reasons presented above, this case should be dismissed without prejudice in favor of plaintiff properly refiling it in the Western District of Washington in accordance with law.

---

[1] In the event of a legal action involving a third party, additional scenarios may arise. Under the sea waybill, "Merchant irrevocably consents to the commencement and to the transfer of venue in any or all such actions to any other venue in which Carrier is party to a legal action brought by itself or a third party" that involves the cargo. T&Cs at § 27(a). The "non-exclusive" language provides flexibility, for instance, as this provision seems to contemplate, to allow joinder of a Merchant into a case with a third party in a non-designated forum.

9

Date:	June 21, 2022.

        LANE POWELL PC

        *s/ Steven W. Block*
        Steven W. Block, NY State Bar No. 2121259
        1420 Fifth Avenue, Suite  4200
        Seattle, WA 98101
        Email: blocks@lanepowell.com
        Phone: (206) 223-7718

        *Attorney for Defendant Expeditors International of Washington, Inc. d/b/a Expeditors International Ocean*

116719.0031/9007876.1